UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07CR31 CAS |
| | ) | (FRB) |
| DEWEY C. JOHNSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b).

Defendant's Motion To Suppress Statements (Docket No. 20)

Testimony and evidence was adduced on the defendant's motion at a hearing on October 30, 2007. From the testimony and evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

Findings of Fact

Dewey Johnston and Cassandra Winters were arrested in early October, 2006, in Charleston, Missouri. The arrests were the result of the investigation of several residential burglaries in Scott County, Missouri, in which electronic items, jewelry, guns and various other items were taken. Following their arrests both were transported to the Scott County Jail. Scott County Deputy

Gregg Ourth transported Dewey Johnston.  Johnston was irate, upset and combative during the ride.  At some point, upon arrival in Scott County, a taser was used to subdue Johnston who had become aggressive.

About eight days later Johnston sent a message to Deputy Ourth that Johnston wished to speak with Ourth.  Johnston was still confined at the Scott County Jail.  Deputy Ourth had Johnston transported to his office.  Upon arrival and before the interview began Deputy Ourth advised Johnston of his Miranda rights, and specifically that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to speak to a lawyer and to have a lawyer present during questioning if he wished, that if he could not afford a lawyer one could be appointed to represent him before questioning if he wished, and that he could choose to exercise these rights at any time and to not answer questions or to make any statements.  Deputy Ourth advised Johnston of the rights using a written form.  Johnston said that he understood these rights and that he wished to answer questions, signing the written form so stating.[1]

Johnston expressed concern to Deputy Ourth about Cassandra Winters, who Johnston described as his fiancé.  Johnston was concerned about what might happen to Winters as a result of her involvement in the crimes under investigation.  Johnston said he

---

[1] At the time of the hearing the government did not have the form in its possession.  A copy of the form was subsequently obtained and has been submitted to the court.  The form has been filed and docketed as a motion hearing exhibit.

believed Winters was expecting a child.  Johnston expressed a desire for Winters to be able to get out of jail and to live with Johnston's mother.  Deputy Ourth told Johnston that Winters would be processed through the criminal justice system, and that because of her lack of a criminal record she would likely receive a sentence of probation.

Johnston told Deputy Ourth that Johnston felt that the use of drugs caused his problems and that Johnston felt that he needed long-term treatment.  Deputy Ourth told Johnston that such programs were available in the Missouri Department of Corrections.  Deputy Ourth told Johnston that, "If in fact he was there in my office to admit to his guilt to these crimes, that was probably what he needed to do."

Deputy Ourth asked Johnston a series of questions which Ourth typed out on a computer.  Ourth would then type the answers which Johnston gave.  At the end of the interview the typed questions were printed out.  Johnston then initialed the form, which again advised him of his Miranda rights, and then initialed each of his answers to the questions.  He also signed each page of the typewritten form. (See Government's Motion Hearing Exhibit 1).

During the interview Johnston appeared lucid and coherent.  His answers were responsive and appropriate to the questions asked of him.  Deputy Ourth made no threats or promises to Johnston in order to induce him to waive his rights or to make any statements.

Discussion

As grounds to suppress the statements made by him to Deputy Ourth the defendant asserts that the statements "were elicited without the Defendant being fully advised of and afforded his rights under the Fifth Amendment of the United States Constitution." This claim is not supported by the evidence adduced at the hearing on the defendant's motion.

In Miranda v. Arizona, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. Id. at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the persons at trial. Id. at 479.

In this case, before beginning any questioning of the defendant Deputy Ourth advised the defendant of all of his rights as required by Miranda. After being so advised, the defendant signed a written form acknowledging that he had been advised of and understood these rights and agreed to answer questions. The

written acknowledgment and waiver is "strong proof of the validity of that waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979). Further, the defendant was advised of his Miranda rights a second time before Deputy Ourth began typing out his written questions and the defendant's answers to those questions. Johnston then again initialed the form acknowledging that he had been advised of and understood his rights and agreed to answer questions.

The defendant also asserts in his motion that the statements were involuntary and elicited by coercion. Again, the evidence adduced at the hearing does not support this claim. A statement of a defendant is not voluntary if it is the product of conduct by law enforcement officials which overbore the will of the defendant. Haynes v. Washington, 373 U.S. 503, 513-14 (1963); Colorado v. Connelly, 479 U.S. 157, 170 (1986). All of the factors here indicate that the statements of the defendant was voluntary and not the result of coercion by Deputy Ourth. First, the interview was initiated by the defendant himself who sent word from jail that he wanted to speak to Deputy Ourth. Huckelbury v. Wainwright, 781 F.2d 1544 (1st Cir. 1986)(Confession voluntary because defendant initiated contact and was aware of Miranda rights). Secondly, before the interview began the defendant was advised of his Miranda rights and acknowledged that he understood them. Simmons v. Bowersox, 235 F.3d 1124, 1132-33 (8th Cir. 2001)(Statement voluntary because defendant advised of and waived

Miranda rights). The fact that Deputy Ourth, in response to defendant's comments that he had a drug problem and needed long-term treatment, that such programs were available in the Department of Corrections did not render defendant's statements involuntary. United States v. McClinton, 982 F.2d 278, 282-83 (8th Cir. 1992)(Statement not involuntary because detectives told defendant he would receive help for drug problem if he talked to them about crime). Likewise, the fact that Deputy Ourth told the defendant, again in response to the defendant's expressed concerns about the status of Ms. Winters, that Winters was going to be prosecuted for her involvement in various offenses and that she likely would receive probation, did not render the defendant's statements involuntary. United States v. Haynes, 301 F.3d 669, 684 (6th Cir. 2002)(Threat of prosecution of daughter did not render defendant's statement involuntary). Deputy Ourth's statement to Johnston that if he had come to the office to confess, then that was what he should do, did not render the statement involuntary in view of all of the circumstances. Bolder v. Armontrout, 921 F.2d 1359, 1366 (8th Cir. 1990)(Statement by officer to defendant that telling the truth "would be better for him" did not render statement involuntary). The evidence shows that Deputy Ourth made no threats or promises to the defendant in order to induce him to make any statements. The defendant acknowledges so in his written statement. The totality of the circumstances demonstrate that the defendant's statements were voluntary.

## Conclusion

For all of the foregoing reasons the defendant's Motion To Suppress Statements should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion To Suppress Statements (Docket No. 20) be denied.

The parties are advised that they have until **December 3, 2007,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of November, 2007.